# EXHIBIT 2

CJ22 3302 -
timaons


*10468319 34*

## THE DISTRICT COURT OF OKLAHOMA COUNTY
## STATE OF OKLAHOMA

| | |
|---|---|
| JOHN LUCAS DIXON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. CJ-2022-3302 |
| | ) |
| LIBERTY MUTUAL PERSONAL | ) |
| INSURANCE COMPANY, | ) |
| | ) FILED IN DISTRICT COURT |
| and | ) OKLAHOMA COUNTY |
| | ) |
| LIBERTY MUTUAL INSURANCE | ) JUL 11 2022 |
| GROUP, INCORPORATED, | ) RICK WARREN |
| | ) COURT CLERK |
| Defendants. | ) 109 |

## PETITION

COMES NOW Plaintiff John Lucas Dixon, and for his causes of action against Defendants Liberty Mutual Personal Insurance Company and Liberty Mutual Insurance Group, Incorporated, states:

### JURISDICTION AND VENUE

1.  Plaintiff John Lucas Dixon ("Plaintiff") is a citizen of the State of Oklahoma and a resident of Oklahoma City, Oklahoma County, Oklahoma.

2.  Defendant Liberty Mutual Personal Insurance Company is an insurance company with its corporate headquarters and principal place of business in Boston, Massachusetts. It is a wholly owned subsidiary of Liberty Mutual Insurance Group, Incorporated an insurance company with its corporate headquarters and principal place of business in

1

Boston, Massachusetts.   Herein, these entities will be collectively referred to as "Defendant." Defendant is licensed to engage in the business of insurance in the State of Oklahoma, including in Oklahoma County; and at all material times did so.

3. The real property which is at issue in this case (the "Property") is located at 6005 Harwich Manor St., Oklahoma City, OK 73121-4740, in this County.

4. The events from which this lawsuit arose occurred at the Property in Oklahoma City, Oklahoma County, Oklahoma.

5. The District Court in and for Oklahoma County has jurisdiction over the parties hereto and over the subject matter of this case.   Venue properly lies in this Court under 12 O.S. §§ 137 and 187.

## FACTS

6. Plaintiff hereby adopts and realleges each of the facts and allegations set forth in paragraphs 1-5 above.

7. Plaintiff owns the Property, which was damaged by windstorms on or about July 11, 2020, and on or about July 19, 2021.  The Property was subjected to wind gusts of up to 60 miles per hour.  The Property sustained damage fairly assessed by a licensed public adjuster at the estimated value of $84,996.65.

8. Plaintiff was the named insured under a policy of insurance with number H3V-291-720857-40 0 8 and under its predecessor policy, which were labeled "LibertyGuard Deluxe Homeowners Policy" (the "Policies").  The Policies provided insurance against risk of direct loss to the Property.  The windstorms in issue occurred during the periods the Policies were in effect.  Although the windstorms in issue caused the damage stated

above, Defendant declared to Plaintiff in writing on September 28, 2021, that "there is

no coverage for your loss."

9.      In an effort to justify its determination, Defendant's representatives charged with the

duty to adjust Plaintiff's loss engaged in the following:

(a) One of Defendant's representatives simultaneously maintained that he saw broken

roofing tiles at "random locations" *and* that he saw the breaks in "common foot-

trafficked areas."  This analysis was calculated to deny Plaintiff's claim without

there being any evidence of any footfall causing damage to the Property's roof.

(b) One of Defendant's representatives maintained that Plaintiff's roof damage was

attributable to a tree limb which "overhung" part of the roof that had been removed

prior to the loss at issue.

(c) Defendant also attributed the roof damage in issue to "normal volumetric changes

in the concrete tiles due to variations in temperature over the years" without

adequate evidentiary support.  Defendant's representative also speculated openly

about poor installation and non-uniform support conditions without adequate

evidentiary support.  These blanket propositions were put forth in support of

Defendant's total denial of Plaintiff's claim with no supporting factual basis and

are thus speculative

10.     In its handling of Plaintiff's claim, Defendant breached the insurance contract and the

implied covenant of good faith and fair dealing, as a matter of standard business

practice, in the following respects:

a. failing and refusing payment and other policy benefits for the covered damage to Plaintiff's home at a time when Defendant knew that he was entitled to those benefits;

b. failing to properly investigate Plaintiff's claim and to obtain additional information both in connection with the original refusal and following the receipt of additional information after reinspection of the home at request of Plaintiff s representatives;

c. refusing to honor Plaintiff's claim in some instances for reasons contrary to the standard insurance industry claims handling standards, express provisions of the policy, and/or Oklahoma law;

d. refusing to honor Plaintiff's claim in some instances by applying restrictions not contained in the policy;

e. refusing to honor Plaintiff's claim in some instances by knowingly misconstruing and misapplying provisions of the policy;

f. failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claim arising under these policies, to include Plaintiff's claim;

g. not attempting in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claim once liability had become reasonably clear;

h. forcing Plaintiff, pursuant to its standard claims practice, to retain counsel in order to secure benefits Defendant knew were payable;

i. failing to properly evaluate any investigation that was performed;

j. failing and refusing to properly investigate and consider the insurance coverage Defendant agent promised to its insured;

4

k.  forcing the insured to hire an attorney to obtain proper payment of property claims;

l.  delaying payment of certain benefits; and

m.  refusing to consider the reasonable expectations of the insured and beneficiaries;

all in violation of the covenant of good faith and fair dealing and resulting in

financial benefit to Defendant.

11.  Defendant acted unreasonably and in bad faith in delaying, denying and underpaying

Plaintiff's claims.

12.  Defendant recklessly disregarded and/or intentionally and with malice breached its

duty to deal fairly and act in good faith entitling Plaintiff to recover punitive damages.

13.  As a result of Defendant's actions, Plaintiff has suffered damages in excess of seventy-

five thousand dollars ($75,000.00).

WHEREFORE, Plaintiff prays for judgment against the Defendant and for money damages

in excess of the amount required for diversity jurisdiction pursuant to Section 1332 of Title 28 of

the United States Code, punitive damages in excess of $75,000.00, together with interest, costs,

and all other relief which this Court deems just and equitable.

Respectfully submitted,

Simone Fulmer Gaus, OBA #17037
Jacob L. Rowe, OBA #21797
Andrea R. Rust, OBA #30422
FULMER SILL, PLLC
1101 N. Broadway Ave., Suite 102
Oklahoma City, OK  73103
Phone: (405) 510-0077
Fax:    (800) 978-1345
Email:  sfulmer@fulmersill.com
        jrowe@fulmersill.com
        arust@fulmersill.com

**ATTORNEYS FOR PLAINTIFF**

**ATTORNEY LIEN CLAIMED**

**JURY TRIAL DEMANDED**

6